**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gene HONDL, Defendant and Appellant.**

**Cr. Nos. 920400, 920401.**

Supreme Court of North Dakota.

Sept. 29, 1993.

James A. Hope, Asst. State's Atty., Dickinson, for plaintiff and appellee.

William G. Heth, Dickinson, for defendant and appellant.

VANDE WALLE, Chief Justice.

Gene Hondl appealed from criminal judgments of conviction entered upon jury verdicts finding him guilty of terrorizing, a class C felony, and preventing arrest. Hondl contends that the district court erred in failing to instruct the jury on the crime of assault, a class A misdemeanor, and that the evidence. of preventing arrest was insufficient to sustain a conviction thereon. As to both matters, we affirm.

In the early morning hours of June 10, 1992, Hondl entered a car driven by Charlotte, with whom he had formerly had a relationship,[1] and ordered her to drive on. While Charlotte drove, Hondl became physically and verbally abusive toward her. Hondl questioned her about recent relationships she may have had and accused her of lying when she denied having had sexual relations with a certain individual. Charlotte testified at trial that Hondl then began to slap and choke her.

The car eventually was brought to a stop on a county road south of Dickinson. Charlotte, who had already taken off her shoes, fled the vehicle and ran through the ditch. Hondl pursued her and caught her after she had fallen.

Charlotte testified that Hondl then straddled her and ordered her to take off her clothes. When she refused, he told her that he would take them off himself. According to Charlotte, Hondl attempted to undress her, but stopped after having some difficulty with her belt. Charlotte testified that Hondl then reached under Charlotte's skirt, grabbed her crotch area, and said "I'm going to rip out your snatch." After calming down, Hondl purportedly let Charlotte up and the two walked back to the car. Charlotte testified that while walking Hondl made a fist and said to her "I should just knock your block off." Charlotte eventually drove Hondl back to town, dropped him off, and proceeded to the police station to report the incident.

Hondl's testimony at trial corroborated the testimony of Charlotte in most aspects. However, while Hondl admitted having slapped Charlotte, he denied choking her while she was driving the car. He also denied reaching under Charlotte's skirt and grabbing her private area, and he further denied verbally threatening Charlotte.

After interviewing Charlotte, Dickinson Law Enforcement Officers contacted the Stark County Sheriff's Department. Together they decided to arrest Hondl immediately.

Two sheriff's deputies, Deputies Oestreich and DeBoer, and one officer, Officer Russell, approached the residence of Hondl's parents, where Hondl was known to be. Hondl, dressed only in his pants, opened the door, stepped out onto the doorstep and asked what they wanted. Officer Russell asked Hondl whether he had been involved in an incident involving Charlotte earlier that morning. Hondl answered affirmatively. Officer Russell and Deputy Oestreich then told Hondl that he was under arrest. Hondl asked them for an arrest warrant; Deputy Oestreich, grabbing Hondl's arm, responded that although they did not have an arrest warrant, they did not need one. Hondl jerked his arm free and turned back into the house. The officers pursued. Hondl's mother, who had been standing near Hondl in the doorway and had overheard the conversation, was pushed out of the way; she fell against the wall and onto the floor.

---

1. Charlotte and Hondl had lived together for a period of six to eight months in 1991. Charlotte had since obtained a restraining order against Hondl; this restraining order was in effect at the time of the June 10, 1992, incident.

**406**

Officer Russell and Deputies Oestreich and DeBoer each testified at trial that Deputy Oestreich caught Hondl as he attempted to flee down the corridor and that a scuffle ensued. Deputy Oestreich again grasped Hondl's arm, but Hondl broke the grip by pushing on and injuring Deputy Oestreich's thumb. The injury required Deputy Oestreich to undergo surgery and to wear a cast and plaster splint for over a month and one-half.

Deputy Oestreich and Officer Russell testified that Officer Russell then placed Hondl in a headlock, with his left arm around Hondl's neck. Both testified that Hondl struggled with Officer Russell and attempted to kick him with his bare feet. Officer Russell testified that Hondl attempted to brace himself against the wall to prevent being led from the house, prompting Officer Russell to strike Hondl on the arm with his nightstick. Hondl was forced from the residence and onto the cement outside. Hondl's mother again was caught up in the whirlwind of activity and suffered injury when she was knocked to the ground a second time.

While Hondl was being handcuffed, Deputy Oestreich sat on Hondl's feet to prevent him from kicking. Hondl was placed in a squad car and taken to the Law Enforcement Department.

Hondl was charged with terrorizing, in violation of section 12.1–17–04, NDCC, and preventing arrest, in violation of section 12.1–08–02, NDCC. He was convicted on each charge.

■ On appeal, Hondl contends that the trial court erred in denying his motion for a jury instruction on assault. Hondl admits that, during commission of the acts that the jury found to have constituted terrorizing, he committed an assault. Hondl asserts that, under the facts of his case, assault was established by proof of the same or less than all

the facts used to establish terrorizing, and that assault is therefore a lesser included offense of terrorizing. See NDCC § 12.1–01–04(15)(a) [2]. Hondl argues that the jury therefore should have been given the alternative of convicting him either of assault or of terrorizing. We disagree.

The North Dakota Century Code defines terrorizing as follows:

"12.1–17–04. Terrorizing. A person is guilty of a class C felony if, with intent to place another human being in fear for that human being's or another's safety or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious disruption or public inconvenience, or in reckless disregard of the risk of causing such terror, disruption, or inconvenience, the person:

1. Threatens to commit any crime of violence or act dangerous to human life; or

2. Falsely informs another that a situation dangerous to human life or commission of a crime of violence is imminent knowing that the information is false."

NDCC § 12.1–17–04. Terrorizing, in the sense of the term applicable to the facts of this case, thus proscribes *threats* to commit crimes of violence or acts dangerous to human life, regardless of whether the victim actually suffers physical harm.

■ Conversely, the various degrees of assault, as defined by the North Dakota Century Code, proscribe the actual commission of violent or dangerous acts. See NDCC §§ 12.1–17–01 to 12.1–17–02. In effect, the North Dakota Century Code has defined as "assault" that which at common law would have been considered "battery". See State v. Sheldon, 301 N.W.2d 604 (N.D.1980) [citing Minutes of the Committee on Judiciary "B", May 11 and May 12, 1972], cert. denied, 450

---

**2.** The three basic variants of "included offenses" are defined in section 12.1–01–04(15), NDCC. That section provides,

" 'Included offense' means an offense:
a. Which is established by proof of the same or less than all the facts required to establish commission of the offense charged;

b. Which consists of criminal facilitation of or an attempt or solicitation to commit the offense charged; or
c. Which differed from the offense charged only in that it constitutes a less serious harm or risk of harm to the same person, property, or public interest, or because a lesser degree of culpability suffices to establish its commission."
NDCC § 12.1–01–04(15) [1985 & Supp.1993].

U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204 (1981). In North Dakota, assault, by definition, must either involve some degree of physical injury or must involve a firearm or other destructive device. *See* NDCC §§ 12.1–17–01 to 12.1–17–02.

Because one may terrorize without causing physical injury and without utilizing a firearm or destructive device, it is possible to terrorize without having committed an assault. In light of the distinct elements of the offenses, therefore, assault cannot be considered a lesser included offense of terrorizing.[3] We find no error in the court's failure to instruct the jury on the crime of assault.[4]

Hondl's other contention on appeal is that the record fails to support his conviction of preventing arrest. Our review of a jury verdict is limited to determining whether, viewed in a light most favorable to the verdict, the evidence is sufficient to support the verdict. *State v. Wright*, 470 N.W.2d 594 (N.D.1991); *State v. Frey*, 441 N.W.2d 668 (N.D.1989).

The record contains evidence that, when Hondl was first placed under arrest, he jerked his arm free from Deputy Oestreich's grasp and fled into the house. The various accounts of the arresting officer and deputies indicate that Deputy Oestreich caught Hondl and that a struggle ensued. Deputy Oestreich testified that he attempted to grab a hold of Hondl again, but Hondl broke Oestreich's grip by pushing on his thumb, causing injury to the thumb. Officer Russell testified that Hondl kicked him and tried to wrestle his nightstick from him. Hondl's mother testified that she was injured after twice being knocked down by the officers attempting to arrest Hondl. Evidence was presented indicating that Hondl physically resisted being removed from the residence by bracing his arm against the wall and that, once outside, Hondl continued to kick at the officers until he was finally subdued and placed in Deputy Oestreich's vehicle.

We conclude that the record contains competent evidence, viewed in a light most favorable to the verdict, to permit the jury to reasonably draw an inference that Hondl intended "to prevent a public servant from effecting an arrest" and thereby created "a substantial risk of bodily injury to the public servant or to anyone except himself, or employe[d] means justifying or requiring substantial force" to overcome his resistance. *See* NDCC § 12.1–08–02.

The judgments of conviction are affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ.

---

3. Whether an offense is an included offense is only the first prong of a two-part inquiry on the issue of whether the court erred in failing to give an instruction on a lesser offense. Even if the lesser offense is an included offense, the court is not required to give an instruction on the offense unless there is evidence that creates a reasonable doubt as to the greater offense but supports conviction of the lesser included offense. *State v. Tweed*, 491 N.W.2d 412 (N.D.1992).

4. Hondl's concession that he committed an assault while committing the acts that the jury found to constitute terrorizing does not dissuade us from this conclusion. Charlotte testified that, while reaching under her dress, Hondl said "I'm going to rip out your snatch." Later, according to Charlotte's testimony, Hondl, with clenched fist, said "I should just knock your block off." Viewing this evidence in a light most favorable to the verdict, *see State v. Wright*, 470 N.W.2d 594 (N.D.1991), Charlotte's testimony was sufficient for the jury to find that Hondl, with intent to place Charlotte in fear for her safety, or in reckless disregard of the risk that Charlotte would be placed in such fear, threatened her with a crime of violence or an act dangerous to human life. These two threats, however, were distinct from the alleged slapping, grabbing and choking that Hondl concedes would have warranted a conviction for assault. The decision whether to charge Hondl with assault, terrorizing or both fell squarely within the realm of prosecutorial discretion.

Moreover, even when an included offense is at issue,

"[w]e are not satisfied that justice will be done if instructions on the lesser included offense are given regardless of the evidence because it may well lead the jury to a compromise decision, which is not compatible with the function of the jury in a criminal case."

*State v. Piper*, 261 N.W.2d 650, 654 (N.D.1977). Hondl has all but conceded that his request for an instruction on the crime of assault was made solely in the hope of obtaining such a compromised verdict.