STATE of North Dakota, Plaintiff
and Appellee,

v.

Andrew S. AZURE, Defendant
and Appellant.

Cr. Nos. 930411, 930412.

Supreme Court of North Dakota.

Dec. 20, 1994.

Thomas K. Schoppert of Schoppert Law Firm, Minot, for defendant and appellant.

Mary Kathleen O'Donnell, State's Atty., Rolla, for plaintiff and appellee.

SANDSTROM, Justice.

Andrew Azure appeals from a judgment of conviction, following a jury verdict of guilty for delivery of alcohol to a minor and fleeing or attempting to elude a police officer. Azure also contends the prosecutor made an improper comment in her closing argument and the trial court's jury instruction on reasonable doubt was contrary to law. Because we conclude the reasonable doubt instruction was insufficient, we reverse.

I

This case was previously before us on separate legal issues. *See State v. Azure*, 520 N.W.2d 574 (N.D.1994).

Andrew Azure and two adult companions accompanied three underage girls to a Rolette bar on January 15, 1993. The girls expressed doubt about entering the bar. Azure, who was then employed by the Bureau of Indian Affairs as Captain of the Belcourt Police, assured the girls they had nothing to worry about as long as he was with them. Once inside, Azure ordered a round of drinks and paid for it. The bartender serving the drinks noticed the girls appeared young, but did not check their identification because they were with Azure. The group continued to drink, with Azure and one of his companions taking turns purchasing the drinks.

The group left the bar around midnight. Azure purchased alcoholic beverages before leaving and placed a case of beer in the bed of his pickup and brought a bottle of alcohol into the cab. One of Azure's male companions left in a separate car, so the remaining five climbed into the cab of Azure's truck. One of the minors drove the truck, Azure sat in the middle, his companion sat on the right side, and the other two minors sat on their laps. The bottle of alcohol was passed around the cab for all to drink.

A Rolette County deputy sheriff was on duty and received a report of a possible drunk driver, along with a description of the vehicle. The deputy spotted the vehicle going above the posted speed limit. He stopped the vehicle and recognized Azure and the other occupants. The deputy asked Azure to step out of the truck to discuss the matter. Azure replied he did not want to get out because the truck had stopped in the street and was a possible traffic hazard. The deputy told them to drive up to a nearby gravel road and pull off. The truck drove ahead, but did not pull off onto the gravel road. Instead, the truck drove for three to four more miles. At that point, the deputy turned on his red flashing lights. The truck pulled over and the deputy again approached the truck and asked Azure to step out. Azure refused. The deputy told Azure to

"wait a minute" and went back to his patrol car to use the radio. The three minors then either climbed out or were pushed out of the truck, and Azure fled the scene. The deputy did not pursue Azure, but placed the intoxicated girls in his patrol car. A North Dakota Highway Patrol Officer was approaching the scene from the opposite direction, but lost control of his vehicle and could not pursue Azure.

Azure was tried by a jury for delivery of alcohol to a minor and fleeing or attempting to elude a police officer. The jury returned a verdict of guilty on both charges on September 30, 1993. On October 12, 1993, Azure filed his motion for a new trial alleging the trial court gave an erroneous instruction on reasonable doubt and the prosecutor made an improper statement during closing arguments. The trial court denied the motion for new trial and Azure appeals.

The trial court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06(1). This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. § 29–28–06(1), (2). The appeal from the judgment is timely under Rule 4(b), N.D.R.App.P. Azure erroneously contends he is appealing from a denial of his motion for new trial. Azure's motion was not filed within the mandatory seven-day period found in Rule 33(c), N.D.R.Crim.P. The motion was untimely, therefore, the trial court lacked jurisdiction to consider it. *State v. Simek*, 502 N.W.2d 545 (N.D.1993). The notice of appeal from the judgment of guilt was timely filed, so we review it instead.

## II

Azure's first grounds for reversal is a statement the prosecutor made in closing argument. The alleged improper argument was: "Ms. Giron, Mr. Wawryk, Ms. Foss, Ms. Davis, Mr. Coleman, Ms. Azure, Mr. Hardy, Mr. Henry, Ms. Baker, this is your community. Send a message from this courtroom that your community, law enforcement officer are not above the law." At the outset, we note the transcript is riddled with errors, thus, it is not clear whether counsel's verb usage was inaccurate or even if punctuation was correctly placed in this quoted portion. We hold, however, that neither the statement as it appears in the record, nor as it is construed by Azure requires reversal.

■ The control and scope of closing arguments are left to the discretion of the trial court. A verdict will not be reversed on the ground the prosecutor exceeded the scope of permissible closing argument, unless the defendant establishes the prosecutor's comments were improper and prejudicial. *State v. McKinney*, 518 N.W.2d 696, 700 (N.D.1994). Error is prejudicial if it causes substantial injury to the defendant such that a different decision would have resulted absent the error. *State v. Marks*, 452 N.W.2d 298, 302 (N.D.1990). At the time of the improper argument, the defendant must object and request a curative instruction so that the objection is not waived. *McKinney* at 701. We seldom reverse on appeal because it is generally presumed the jury will follow the trial court's admonition and disregard the improper statement. *State v. Paulson*, 477 N.W.2d 208, 210 (N.D.1991). In this case, following the prosecutor's statement, Azure objected and requested an instruction from the court. The trial court then admonished the jury to disregard the statement about a message to the community.

■ Upon reviewing the record, it appears Azure waived any objection to the prosecutor addressing each juror by last name. After the statement, Azure's counsel objected:

"Your honor I move to strike that as being improper prosecutorial comment. That is absolutely not the issue in this case. They are not here to send any message. It goes way beyond the facts of this case. I move that that's improper argument on behalf of the State. I request the court to strike that. It's not the issue in this case."

Azure did not contest the addressing of each juror by name. Further, Azure only requested the court strike the comment. The trial court complied and had the argument stricken. Azure did not move for a mistrial. Thus, Azure received all that he requested and we must review the argument for plain error.

■ We hold that addressing jurors by name, even though improper, was not preju-

dicial. We find no authority, and Azure cites none, to support reversal for merely addressing all of the jurors by last name with no attempt to single out a juror for special treatment or to appeal to that juror's fear or prejudice. *See generally* Annotation, *Prejudicial Effect of Counsel's Addressing Individually or by Name Particular Juror During Argument,* 55 A.L.R.2d 1198 (1957, Supp. 1987 & Supp.1994). In this case, the prosecutor did not single out a specific juror. Rather, she addressed all of them in the same manner the phrase "ladies and gentlemen of the jury" is used to address jurors.

■ Azure cites two cases to support his argument the prosecutor's request to send a message is prejudicial. In *People v. Williams,* 65 Mich.App. 753, 238 N.W.2d 186 (1975), the prosecutor said during closing argument: "Ladies and gentlemen of the Jury, you have an opportunity to effect the drug traffic in this city. You have a voice. You have a chance to use it." *Williams* at 187. Similarly, in *People v. Biondo,* 76 Mich. App. 155, 256 N.W.2d 60 (1977), the prosecutor used an argument generally termed "civic duty" to persuade the jury to save the city from financial ruin. *Biondo* at 61–62. In both cases the court reversed the defendants' convictions because the statements were prejudicial. *See Williams* at 188 ("[T]he prosecutor appealed to the jurors' fears and encouraged them to go outside the evidence and decide the case on the basis of their desire to alleviate the drug problem."); *Biondo* at 63 ("Appealing to the social fears of the jury can hardly be said to be relevant to the sole issue of the trial, that being Mr. Biondo's guilt or innocence."). Each of these cases stands for the proposition the jury should convict on the basis of a defendant's guilt, and not on the potential consequences upon the community of the jury's decision. "Predictions about the effect of an acquittal on lawlessness in the community also go beyond the scope of the issues in the trial and are to be avoided." ABA, *Standards for Criminal Justice: Prosecution Function and Defense Function* Standard 3–5.8 commentary at 109 (3d ed. 1993).

But the prosecutor's argument in this case did not call for the jury to consider the effects of acquittal upon the community. The statement was not intended to inflame the jury, but rather to explain to the jurors they were to judge a law enforcement official by the same standards as apply to the community. *See United States v. Koon,* 34 F.3d 1416, 1444 (9th Cir.1994). A prosecutor's request the jury act as the "conscience of the community" and to "decide what conduct is acceptable by your police" was not improper and "did not place upon the jurors the burden of maintaining social order." *Koon.* Captain Azure was accused of using his status to obtain service for the minors at the bar and to elude other law enforcement officials. The prosecutor argued Azure should not be allowed to use his position to be above the law. The "message" was to be sent to Captain Azure—this community will not tolerate abuse of power, in this community we all must abide by the law.

### III

Azure objected to the trial court's proposed jury instruction on reasonable doubt prior to trial. Instead, he requested North Dakota Pattern Jury Instruction No. 2002 which provides:

*"Reasonable Doubt*

"The phrase 'reasonable doubt' means what the words imply. It is a doubt based on reason arising from a thorough and impartial consideration of all of the evidence in the case. It is the state of mind in which you do not feel an abiding conviction amounting to a moral certainty of the truth of the charge. While you cannot convict the Defendant on mere surmise or conjecture, neither should you go outside the evidence to imagine doubts to justify acquittal. If, after careful deliberation, you are convinced to a moral certainty that the Defendant is guilty of the crime charged, then you are satisfied beyond a reasonable doubt."

N.D.J.I. No. 2002.

The trial court disagreed with Azure and instructed the jury:

"The phrase 'reasonable doubt' means what the words imply. It is a doubt, based on reason and common sense, arising from

a thorough and impartial consideration of all of the evidence in the case. It is the kind of doubt which would make a reasonable person hesitate to act in matters of great importance. While you cannot convict the defendant on mere surmise or conjecture, neither should you go outside the evidence to imagine doubts to justify acquittal.

"Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs. If, after careful deliberation, you are so convinced that the defendant is guilty of the crime charged, then you are satisfied beyond a reasonable doubt."

Azure contends this instruction is impermissible and contrary to the law of this State, thus requiring reversal. We review the trial court's instruction as a whole and consider whether it correctly and adequately advised the jury of the law. If the instruction taken as a whole is erroneous, relates to a subject central to the case, and affects the substantial rights of the accused, adequate grounds for reversal exist. *City of Minot v. Rubbelke*, 456 N.W.2d 511, 513 (N.D.1990).

Azure's request for N.D.J.I. No. 2002 does not ordain its use by the trial court. Pattern jury instructions are not mandatory, and trial courts are not required to use them. *Rubbelke* at 513. Further, the trial court is not required to submit instructions in the specific language the defendant requests. *Rubbelke.* This Court counseled lower courts, "We strongly recommend adherence to the pattern jury instruction on 'reasonable doubt' for a number of reasons." *Rubbelke* at 515. The reasons were essentially the time-tested acceptance of the instruction and the uniformity in application and review possible if all courts used the pattern instruction. *Rubbelke.* Because recent United States Supreme Court decisions have called the pattern instruction into question, we conclude variation may be appropriate.

Azure first argues the instruction is erroneous because it uses the language: "It

is the kind of doubt which would make a reasonable person hesitate to act in matters of great importance." Repeated later as: "[A] reasonable person would not hesitate to rely and act upon it in the most important of his own affairs."

Azure states this language was rejected in the early case *Territory v. Bannigan,* 1 Dakota 451, 46 N.W. 597 (1877). The instruction given in *Bannigan* defined reasonable doubt: "[B]y 'doubt' I do not mean that you must be satisfied beyond the possibility of a doubt, but in determining this question of doubt *you will act as prudent, careful business man would act in determining an important matter pertaining to his own affairs.*" *Bannigan* at 599 (Emphasis added). Such a limitation allowed the jury to convict at a standard below reasonable doubt. The Court held the instruction erroneous because a careful, prudent business man would not require proof beyond a reasonable doubt before acting, a lower threshold would be all that was necessary. *Bannigan* at 600.

This case is distinguishable, however, because here the jury was instructed that reasonable doubt would make a reasonable person *hesitate* to act in matters of great importance. The distinction lies in "hesitate to act," rather than "to act" as a reasonable person. The instruction given by the trial court in this case required the jury to hesitate to act in those cases in which a reasonable person would do so. This definition has been expressly approved by the United States Supreme Court. "In any event, the instruction provided in alternative definition of reasonable doubt: a doubt that would cause a reasonable person to hesitate to act. This is a formulation we have repeatedly approved, . . ." *Victor v. Nebraska,* 511 U.S. ——, ——, 114 S.Ct. 1239, 1250, 127 L.Ed.2d 583, 599 (1994).

Azure's contention the instruction erroneously repeated the phrase is also without merit. The latest edition of the Eighth Circuit Model Criminal Instructions also repeats the "reasonable person hesitate to act" language. Model Instruction 3.11 provides:

"A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A rea-

sonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt."

 Azure next argues the absence of the phrase "moral certainty" in the trial court's instruction. In the recent *Victor* case, the United States Supreme Court expressed its discontent over the continued use of that outdated phrase. The Court did not condone the use of "moral certainty" because its meaning has changed over time, and it could continue to do so to the point it conflicts with the reasonable doubt standard. *Victor*, 511 U.S. at —, 114 S.Ct. at 1248, 127 L.Ed.2d at 597. The Court concluded most federal instructions do not contain the phrase, but it lacked supervisory power over the state courts to require a change in those forums. *Victor*. Thus, the trial court may have removed the "moral certainty" language from its instruction to comply with the United State's Supreme Court's suggestion. The trial court's modification was to Azure's benefit because it removed a phrase that could have confused jurors into convicting on less than proof beyond a reasonable doubt. *See Victor*, 511 U.S. at —, 114 S.Ct. at 1247, 127 L.Ed.2d at 596.

 Finally, we address the absence of the phrase "abiding conviction" in the trial court's instruction. The Supreme Court, in *Victor*, held the use of "abiding conviction" with "moral certainty" saved the questionableness of the latter phrase.

"As used in this instruction, therefore, we are satisfied that the reference to moral certainty, in conjunction with the abiding conviction language, impressed upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused. Accordingly, we reject [the defendant's] contention that the moral certainty element of the [jury] instruction invited the jury to convict him on proof below that required by the Due Process Clause."

*Victor*, 511 U.S. at —, 114 S.Ct. at 1247, 127 L.Ed.2d at 596. The Court recognized an instruction using abiding conviction, without reference to moral certainty, correctly states the government's burden of proof. *Victor*. We are not satisfied that the instruction given here taken as a whole, without an "abiding conviction" clause, adequately conveys the concept of "beyond a reasonable doubt." *See Victor*.

We conclude the trial court committed reversible error by instructing the jury as it did.

### IV

Because the jury was not properly instructed, the judgment is reversed and the case remanded for a new trial.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE.