1997 ND 7

**STATE of North Dakota, Plaintiff
and Appellee,**

v.

**Jamie M. CARLSON, aka Jamie Kringler,
Defendant and Appellant.**

**Criminal No. 960070.**

Supreme Court of North Dakota.

Jan. 16, 1997.

Rehearing Denied Feb. 27, 1997.

Phyllis A. Ratcliffe (argued), State's Attorney, Cooperstown, for plaintiff and appellee.

M. Kelly Clark (argued), David Dusek (appearance), and Caroline A. Clark (appearance), of Clark & Dusek, Grand Forks, for defendant and appellant.

MARING, Justice.

[¶ 1] Jamie Carlson appeals from criminal judgments entered upon a special verdict finding him guilty of disorderly conduct and terrorizing. We affirm.

## I

[¶ 2] Carlson's convictions stem from events which began on the evening of September 1, 1995, at the Oasis Bar in Cooperstown and culminated in an early morning disturbance at a private home. During the course of the evening, Griggs County Sheriff Paul Hendrickson responded to one call at the Oasis Bar and two calls at the private residence. During the third call, Hendrickson arrested Carlson for disorderly conduct and Carlson's friend, Bill Brosowske, for assault. Hendrickson testified he handcuffed the prisoners and transported them from Cooperstown to Valley City.

[¶ 3] According to Hendrickson, during the trip to Valley City, Brosowske and Carlson were yelling and swearing at him, and he stopped the patrol car to investigate a comment about a cigarette lighter and to fasten the prisoners' seat belts. Hendrickson testified that, during the stop, Carlson attempted to get out of the patrol car and had to be restrained. Hendrickson also testified that, after the stop, Carlson began smashing his head and shoulders against the door and divider of the patrol car. Hendrickson further testified that Carlson said:

> [D]isorderly conduct's nothing, I'll have the bond, I'll be out tonight and I'm going to kill you.... "I can get your boys, I can fuck them up, I can cut their face, you got a family, I know where you live, it's just across the alley, I can get your home and get you at any time I want and if I can't my family can and my friends can."... "And I can do it any time I want, you can't always be there to protect them."

[¶ 4] Carlson was ultimately charged with trespass at the private residence in Cooperstown, theft of a bottle of liquor from the Oasis Bar, escape or attempted escape from the patrol car, disorderly conduct for smashing his head and shoulders against the inside of the patrol car, and making terrorizing statements to Hendrickson. A jury found Carlson not guilty of theft, escape, and criminal trespass, but convicted him of terrorizing and disorderly conduct. Carlson appealed.

## II

[¶ 5] Carlson contends the trial court erred in allowing a prosecution witness to testify that Brosowske asked a lewd and soliciting question of another customer at the Oasis Bar. Carlson objected to the testimony on the grounds of hearsay and relevancy. On appeal, Carlson contends the statement was not relevant and incited the emotions of the jury against him.

[¶ 6] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.D.R.Ev. 801(c). A statement that is not offered to prove the truth of the matter asserted is not hearsay. *State v. Welch*, 426 N.W.2d 550, 555 (N.D.1988). *See State v. Iverson*, 187 N.W.2d 1, 43 (N.D.), *cert. denied*, 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971).

[¶ 7] The testimony about Brosowske's out-of-court statement was not offered to show he was soliciting a sexual favor. Rather, the testimony helped explain the underlying circumstances leading up to the events that followed. The testimony about Brosowske's soliciting question was not hearsay.

[¶ 8] Under N.D.R.Ev. 401 through 403, a trial court is vested with broad discretion to decide if evidence is relevant and if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Newnam*, 409 N.W.2d 79, 87 (N.D.1987). We employ the abuse-of-discretion standard to review a court's balancing of the probative value of the evidence against the risk of unfair prejudice. *Id.* A trial court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner. *State v. Gefroh*, 495 N.W.2d 651, 653–54 (N.D.1993).

[¶ 9] The testimony about Brosowske's lewd and soliciting question was offensive and was not favorable to Carlson. However, the statement precipitated, and provided context for, the ensuing events. We are not persuaded the court acted arbitrarily, unconscionably, or unreasonably in balancing the probative value of that evidence against the danger of unfair prejudice to Carlson. We hold that the court did not abuse its discretion in admitting that evidence.

## III

[¶ 10] Carlson contends the trial court erred in postponing its ruling on the admissibility of a statement which he made without receiving the warning required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Carlson made the statement during an interview with an agent from the North Dakota Bureau of Investigation regarding Brosowske's allegation of police brutality on the night of the arrest. At trial, when Carlson called himself to testify, the State immediately asked the court to rule on the State's use of the statement for impeachment during its expected cross-examination of Carlson. The court acknowledged the State's request raised "a host of relevant issues that may need to be resolved" and took the request under advisement "to examine the authorities on these respective issues." The court then observed:

[I]t's a quarter to four on Friday and we would have over the weekend to decide that evidentiary question. Counsel would have over the weekend to prepare arguments if they wanted for or against the inclusion of that examination that's been alluded to by the state. So if you want to confer privately again before you go back in you may do that.

Immediately after the court's ruling and without asking for a continuance, Carlson rested without calling himself to testify.

[¶ 11] Carlson contends the court's ruling unfairly influenced his decision to testify on his own behalf and placed him in the untenable position of either introducing the statement during direct examination, or hoping it could not be used against him during cross-examination.

[¶ 12] The trial court is vested with broad discretion regarding the order of proceedings at trial. *State v. Jones*, 557 N.W.2d 375, 376–77 (N.D.1996); *State v. Mayer*, 356 N.W.2d 149, 153 (N.D.1984); *State v. Puhr*, 316 N.W.2d 75, 80 (N.D.1982); N.D.C.C. § 29–21–01. The timing of a court's ruling on a preliminary question is left to the discretion of the court. *State v. Boushee*, 284 N.W.2d 423, 435 (N.D.1979). In *Boushee*, 284 N.W.2d at 435, we recognized that a similar delay in ruling on the admissibility of a defendant's prior felony conviction had an

adverse impact on trial strategy, but we held the trial court did not abuse its discretion in refusing to rule on the request before the defendant chose to testify. *See Gefroh*, 495 N.W.2d at 656 n. 6.

[¶ 13] The trial court did not act arbitrarily, unconscionably, or unreasonably in taking the State's request under advisement until the court was fully advised regarding the admissibility of Carlson's statement. Carlson did not attempt to alleviate the impact of the court's ruling by asking for a continuance over the weekend, and he is in a poor position to claim the ruling unfairly influenced his decision to testify on his own behalf. We conclude the court did not abuse its discretion.

## IV

[¶ 14] In conjunction with the terrorizing conviction, Carlson raises several issues involving "transitory anger." According to Carlson, when Hendrickson stopped the patrol car to fasten the prisoners' seat belts, Hendrickson employed excessive force against the prisoners and reinjured Carlson's recent shoulder injury. Carlson contends Hendrickson's mistreatment triggered Carlson's "transitory anger," which led to the threatening statements. Carlson argues the threatening statements do not constitute terrorizing because they were made during his "transitory anger."

### A

[¶ 15] Carlson argues that the trial court erred in refusing to give his requested instruction on "transitory anger":

The question whether a given statement is a threat turns on whether the communication in its context, would have a reasonable tendency to create apprehension that its originator will act according to its tenor. The threat must be uttered with the purpose of terrorizing another; "purpose" in this context means aim or intention. Intent is a subjective state of mind established by reasonable inference from surrounding circumstances. The threat, however, must not merely express "transitory anger." Transitory anger expresses a threat in the spur of the moment not "seri-

ously made" and is "merely idle" with no intention of executing the same.

[¶ 16] Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *State v. Smaage,* 547 N.W.2d 916, 921 (N.D.1996). Jury instructions must be considered as a whole, and if, when so considered, they correctly advise the jury on the law, they are sufficient, although part of the instructions, standing alone, may be insufficient or erroneous. *State v. Woehlhoff,* 540 N.W.2d 162, 164 (N.D.1995). A trial court is not required to give jury instructions in the exact language requested by a defendant if the instructions given correctly and adequately inform the jury of the applicable law. *State v. Mounts,* 484 N.W.2d 843, 844 (N.D.1992).

[¶ 17] Section 12.1–17–04, N.D.C.C., defines terrorizing:

> A person is guilty of a class C felony if, with intent to place another human being in fear for that human being's or another's safety or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious disruption or public inconvenience, or in reckless disregard of the risk of causing such terror, disruption, or inconvenience, the person:
>
> 1. Threatens to commit any crime of violence or act dangerous to human life;
>
> . . .

[¶ 18] Our criminal code is modeled after the proposed Federal Criminal Code, and we may look to the drafter's official commentaries, the Working Papers of the National Commission on the Reform of Federal Criminal Laws (1970–1971), for insight into the meaning of our corresponding criminal provisions. *State v. Rambousek,* 479 N.W.2d 832, 834–35 (N.D.1992); *State v. Leidholm,* 334 N.W.2d 811, 814 (N.D.1983).

[¶ 19] Section 12.1–17–04, N.D.C.C., was originally patterned after Section 1614 of the proposed Federal Criminal Code.[1] The Working Papers, Volume II at page 837, explain that Sections 1614 and 1616 (Menacing) are intended to cover the traditional field of assault, in which a defendant uses threats to deliberately put another in fear:

> The threat may be a prank, or may be made in anger; while there may be no intent to inflict actual injury, such acts can be intended to cause fear. Such deeds have been traditionally punishable as misdemeanors.
>
> But there can be deeds deliberately designed to instill fear in a large number of people, or to so affect an individual as to disrupt normal life patterns. In short, the proposal conceives of a type of assault, in form of threat, which warrants more than a misdemeanor punishment.
>
> Present Federal law already recognizes that some forms of threat can be quite serious.... These laws make no distinction, however, between the relatively harmless expression of anger and a threat more serious in its impact. The proposed statutes would permit differentiation between a serious and a relatively minor threat against an individual.
>
> ... [I]t is the making of such threats that will be illegal under the proposed statute, regardless of whether the defendant actually plans to carry out the threat.

[¶ 20] Contrary to Carlson's proposed instruction on "transitory anger," the commentaries explicitly recognize that threats may constitute terrorizing, regardless of whether the defendant intends to carry out the threat or to inflict actual injury. *See State v. Hondl,* 506 N.W.2d 404, 406 (N.D. 1993) (N.D.C.C. § 12.1–17–04 proscribes threats to commit crimes of violence or acts dangerous to human life, regardless of whether the defendant intends to inflict injury or the victim suffers physical harm). The commentaries also explain that, even if made in anger, threats are proscribed if they are "intended to cause fear." Under N.D.C.C. § 12.1–17–04, the critical inquiry is whether the defendant intended to place others in

---

1. Section 12.1–17–04, N.D.C.C., was amended by 1983 N.D. Sess. Laws, Ch. 116, § 1, to clarify that the language relating to intent applies to both subsections. 1983 Report of Legislative Council, p. 84. *See State v. Hass,* 268 N.W.2d 456, 461 (N.D.1978) (construing statute before amendment). The 1983 restructuring of N.D.C.C. § 12.1–17–04 does not preclude our reliance on the Working Papers for insight into the meaning of our terrorizing statute.

fear for their safety and a defendant's "transitory anger" is relevant only in that limited context.

[¶ 21] We believe that view is implicitly supported by a case cited by Carlson, *Commonwealth v. Kidd*, 296 Pa.Super. 393, 442 A.2d 826 (1982). The *Kidd* court did not hold that a trial court erred in refusing to give a "transitory anger" instruction.[2] Instead, *Kidd*, 442 A.2d at 827, held that, under Pennsylvania's similar terrorizing statute, the evidence was insufficient to establish the defendant intended to place others in fear for their safety. The *Kidd* court recognized that present ability to inflict harm was not required by the terrorizing statute, but said the statute was not intended to penalize spur-of-the-moment threats which result from transitory anger. 442 A.2d at 827. *Kidd* is a sufficiency of the evidence case, and its import is that serious threats are punishable as terrorizing if they are made with an intent to place others in fear for their safety. Under *Kidd*, spur-of-the-moment threats which result from "transitory anger" are relevant only in the context of whether the defendant intended to place others in fear for their safety.

[¶ 22] The trial court instructed the jury on terrorizing:

A person is guilty of Terrorizing if, with intent to place another human being in fear for his or another's safety, the person:

Threatens to commit any crime of violence or act dangerous to human life.

#### DEFINITIONS

A person engages in conduct: "Intentionally" if, when he engages in the conduct, it is his purpose to do so.

#### ESSENTIAL ELEMENTS OF OFFENSE

The burden of proof resting upon the State is satisfied only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged:

1. That on or about the 2nd day of September, 1995, in Griggs County, North Dakota, the Defendant Jamie Carlson, threatened to commit crimes of violence or acts dangerous to human life upon Paul Hendrickson or upon other members of his family with intent to place Paul Hendrickson in fear for his safety and in fear of the safety of his family;

2. That Defendant made such threats with intent to place Paul Hendrickson in fear for his safety or the safety of other members of his family.

[¶ 23] The trial court's instruction advised the jury on the elements of terrorizing in the context of whether Carlson intended to place Hendrickson in fear for his or his family's safety. Under those instructions, Carlson was not precluded from arguing the effect of his "transitory anger" on the issue his intent. Moreover, Carlson's proposed instruction said that "[t]ransitory anger expresses a threat [which] is 'merely idle' with no intention of executing the same." However, the gist of terrorizing involves whether the defendant intended to place others in fear for their safety, and threats may constitute terrorizing regardless of whether the defendant intends to carry them out, or to inflict actual injury. Carlson's proposed instruction misstated that aspect of the law. The trial court's instructions correctly advised the jury on the law, and we conclude the court did not err in refusing to give Carlson's requested instruction on "transitory anger."

B

[¶ 24] Carlson contends the trial court erred in refusing to allow Larry Hendricks, a licensed physician's assistant who treated Carlson in the emergency room at Mercy Hospital in Valley City on the night of the arrest, to testify as a medical expert. Carlson asserts the court's ruling prevented him from presenting medical evidence to support his claim of police misconduct and precluded the jury from hearing that his state-

2. Carlson has cited no cases requiring a "transitory anger" instruction in a terrorizing case, and our research has revealed none. *See Matter of Welfare of J.K.B.*, 552 N.W.2d 732, 734 (Minn.Ct. App.1996) (in terrorizing case, trial court did not err in refusing to instruct on transitory anger); *State v. Lavastida*, 366 N.W.2d 677, 680 (Minn. Ct.App.1985) (same).

ments to Hendrickson were not made with the culpability required for terrorizing because they were made during his "transitory anger."

[¶ 25] Rule 702, N.D.R.Ev., provides "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *See South v. National R.R. Passenger Corp.*, 290 N.W.2d 819, 831 (N.D.1980).

[¶ 26] Rule 702, N.D.R.Ev., envisions the generous allowance of expert testimony when a witness has some expertise in a relevant field. *State v. Trosen*, 547 N.W.2d 735, 739 (N.D.1996). To qualify as an expert, a witness need not be licensed in a given field. *Oberlander v. Oberlander*, 460 N.W.2d 400, 402 (N.D.1990). Rather, the witness must possess the requisite knowledge, skill, experience, training, or education in that field and must have information that is helpful to the trier-of-fact. *Id.*

[¶ 27] Other courts have held that a physician's assistant may render an opinion within the area of the assistant's expertise. *Jackson v. State*, 516 So.2d 726, 749–50 (Ala. Crim.App.1985); *Wal–Mart v. Industrial Com'n of Arizona*, 183 Ariz. 145, 147, 901 P.2d 1175, 1177 (Ariz.Ct.App.1995); *State v. Tibbetts*, 572 A.2d 142, 143 (Me.1990); *State v. Jones*, 89 N.C.App. 584, 367 S.E.2d 139, 146–47 (1988). The qualifications of an expert witness, however, are primarily for the determination of the trial court, and its determination will not be reversed on appeal unless the court abused its discretion. *Trosen*, 547 N.W.2d at 739.

[¶ 28] After eliciting testimony at trial about Hendricks's qualifications and experience as a licensed physician's assistant, Carlson made a broad offer of Hendricks as "an expert qualified to testify to the medical aspects within this case." During extensive voir dire, Hendricks informed the court that he would testify his supervising physicians had advised him to testify that Carlson's x-rays were "inconclusive" about whether Carlson had refractured his shoulder. The court refused to let Hendricks testify about Carl-

son's x-rays. After additional voir dire, the court ruled that Hendricks could not testify as an expert witness on "all medical issues" in the case, but that he could testify about his examination and treatment of Carlson in the emergency room. Hendricks testified that he examined Carlson at the emergency room and that Carlson was complaining of pain in his left shoulder. Hendricks also testified he did not see any "bruising, contusions, ecchymosis or skin excoriations" on Carlson's head. The court sustained the State's objection to a question about whether Hendricks observed anything on Carlson's head or face that would indicate Carlson had been struck. Hendricks testified, however, he did not recall observing any outward signs of physical trauma on Carlson's head.

[¶ 29] We conclude the trial court did not abuse its discretion in refusing Carlson's broad offer for Hendricks to testify as an expert about "all medical issues" involved in the case. In view of Hendricks's statement about Carlson's x-rays, we cannot say the court abused its discretion in refusing to let Hendricks testify on that subject. Carlson has not specifically identified any other relevant expert opinions that Hendricks was precluded from testifying about. The court limited Hendricks's testimony to "his examination and treatment of this defendant at the Valley City Mercy Hospital." Under the court's ruling, Hendricks was free to testify about his observations of Carlson's condition. We hold that the court did not abuse its discretion regarding the scope of Hendricks's testimony.

[¶ 30] Carlson also asserts the court erred in allowing the State to read excerpts from Hendricks's emergency room report and then refusing to allow Carlson to read the entire report to the jury.

[¶ 31] The record reflects that, during direct examination by Carlson and cross-examination by the State, Hendricks referred to his emergency room report. On redirect, Carlson asked to read the entire report to the jury. The court denied Carlson's request, ruling "[t]he evidence sought to be included from the remainder of the statement[,] having once been subject to direct examination and now on redirect has been

found limited to the scope of the cross-examination[,] will be excluded under Rule 403." The court did not abuse its discretion in refusing Carlson's request.

[¶ 32] Carlson also argues that the trial court erred in refusing to allow him to introduce Hendricks's deposition at trial. The court denied Carlson's request in a pretrial order; however, the court allowed Hendricks to be added to Carlson's witness list. Hendricks testified at trial, and the court's ruling did not preclude Carlson from using Hendricks's deposition at trial for any valid purpose. Carlson's argument about Hendricks's deposition is meritless.

V

[¶ 33] Carlson asserts the trial court erred in refusing to instruct the jury that disorderly conduct was a lesser included offense of terrorizing. Carlson argues that all the elements necessary for a conviction for disorderly conduct are included in the offense of terrorizing.

[¶ 34] We apply a two-step analysis to determine the necessity for a lesser-included-offense instruction. *State v. Clinkscales*, 536 N.W.2d 661, 663 (N.D.1995); *State v. Tweed*, 491 N.W.2d 412, 414 (N.D.1992); *State v. Piper*, 261 N.W.2d 650, 654 (N.D. 1977). First, the offense must be a lesser included offense of the offense charged, and second, there must be evidence which creates a reasonable doubt as to the greater offense, but supports a conviction of the lesser offense beyond a reasonable doubt. *Piper*, 261 N.W.2d at 654.

[¶ 35] A lesser offense is necessarily included in a greater offense if it is impossible to commit the greater without also committing the lesser. *See State v. Jacobson*, 338 N.W.2d 648, 650 (N.D.1983). *See also Hondl*, 506 N.W.2d at 406–07; *State v. Motsko*, 261 N.W.2d 860, 867 (N.D.1978).

[¶ 36] Under N.D.C.C. § 12.1–17–04(1) a person is guilty of terrorizing if "with intent to place another human being in fear for that human being's or another's safety, ... or in reckless disregard of the risk of causing such terror," the person "threatens to commit any crime of violence or act dangerous to human life." Under N.D.C.C. § 12.1–31–01(1),[3] a person is guilty of disorderly conduct if "with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by the individual's behavior, the individual: a. Engages in fighting, or in violent, tumultuous, or threatening behavior."

[¶ 37] Terrorizing and disorderly conduct both require that threats or threatening behavior be done with a similar culpability-intent to place in fear, and intent to harass, annoy, or alarm. However, terrorizing requires that a person "threatens to commit any crime of violence or act dangerous to human life," while disorderly conduct requires that the person "engages in ... threatening behavior" without requiring that the threatening behavior involve "any crime of violence or act dangerous to human life." *See City of Fargo v. McMorrow*, 367 N.W.2d 167 (N.D.1985) (evidence defendant told police officer that defendant "would kick his ass" was sufficient to support disorderly conduct conviction under Fargo City ordinance).

[¶ 38] In cases involving threats or threatening behavior, the disparate element between disorderly conduct and terrorizing is whether the threat or threatening behavior involves "any crime of violence or act dangerous to human life." *Cf.* N.D.C.C. § 12.1–17–06 (menacing requires defendant to place another in fear of "imminent serious bodily injury"); II Working Papers at 837 ("The proposed [terrorizing and menacing] statutes would permit differentiation between a serious and relatively minor threat against an

---

3. Section 12.1–31–01, N.D.C.C., defines disorderly conduct:
   1. An individual is guilty of a class B misdemeanor if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by the individual's behavior, the individual:

   a. Engages in fighting, or in violent, tumultuous, or threatening behavior;

   \* \* \* \* \* \*

   g. Creates a hazardous, physically offensive, or seriously alarming condition by any act that serves no legitimate purpose; ...

individual"). *See State v. Kurle*, 390 N.W.2d 48, 49 (N.D.1986). Under the first prong of our analysis, we conclude that some threats or threatening behavior can constitute both disorderly conduct and terrorizing.

[¶ 39] Under the second prong of our analysis, there must be evidence which creates a reasonable doubt as to the greater offense, terrorizing, and which supports a conviction of the lesser offense, disorderly conduct, beyond a reasonable doubt. *See State v. McDonell*, 550 N.W.2d 62, 63–64 (N.D.1996); *Clinkscales*, 536 N.W.2d at 664; *Tweed*, 491 N.W.2d at 415–17. Requiring independent evidence ensures that a jury will not reach a decision based on sympathy or a compromise verdict. *Clinkscales*, 536 N.W.2d at 664; *Tweed*, 491 N.W.2d at 417; *Piper*, 261 N.W.2d at 654.

[¶ 40] For Carlson to prevail under the second prong, the evidence must create a reasonable doubt that his statements were threats to commit "any crime of violence or act dangerous to human life." Here, Carlson does not dispute that he told Hendrickson

> I'm going to kill you.... "I can get your boys, I can fuck them up, I can cut their face, you got a family, I know where you live, it's just across the alley, I can get your home and get you at any time I want and if I can't my family can and my friends can."... "And I can do it any time I want, you can't always be there to protect them."

At trial, Carlson contended those statements were not made with intent to place Hendrickson in fear for his or his family's safety.

[¶ 41] If the jury had believed Carlson's assertion that he lacked the requisite intent for those statements, the jury could no more convict him on the charge of disorderly conduct than it could convict him for terrorizing. *See McDonell*, 550 N.W.2d at 63–64; *Clinkscales*, 536 N.W.2d at 665; *Piper*, 261 N.W.2d at 654. We are satisfied a reasonable view of the evidence does not create a reasonable doubt about whether Carlson's statements were threats "to commit any crime of violence or act dangerous to human life." *See Clinkscales*, 536 N.W.2d at 665. We conclude the court did not err in refusing to instruct the jury that disorderly conduct was a lesser included offense of terrorizing.

## VI

[¶ 42] Carlson raises two issues regarding the State's closing argument.

[¶ 43] The scope and control of closing arguments are left to the discretion of the trial court. *State v. Azure*, 525 N.W.2d 654, 656 (N.D.1994); *State v. Schimmel*, 409 N.W.2d 335, 342 (N.D.1987). On appeal, we will not reverse a conviction upon the ground that the State exceeded the scope of permissible closing argument unless the defendant establishes the State's comments were improper and prejudicial. *Azure*, 525 N.W.2d at 656; *Schimmel*, 409 N.W.2d at 342. We have said that an improper argument is prejudicial if it causes substantial injury to the defendant so that, absent the error, a different decision would have resulted. *Azure*, 525 N.W.2d at 656. A defendant must object to improper closing argument and request a curative instruction to preserve the issue for appeal. *Id.* Absent a proper objection, we review challenges to closing argument for obvious error. *State v. Ash*, 526 N.W.2d 473, 482 (N.D.1995). We exercise our power to consider obvious errors cautiously and only in exceptional circumstances where a defendant has suffered serious injustice. *Id.*

[¶ 44] Carlson contends the trial court erred in overruling his objection to the State's "golden rule" argument and in failing to admonish the State for making a statement which Carlson claims reflects the State's personal knowledge about his guilt.

[¶ 45] During rebuttal argument, the State argued:

> Terrorizing. Finally, the defendant threatens to kill the sheriff, his kids, his wife. He threatens to burn his house. And he says, "You can't be there all the time to protect them." He has managed to get out of his seat belt by the time he reaches Valley City. This is a big issue. The sheriff probably didn't even know he was out of the seat belt or if he did it was more prudent to continue on without attempting to stop. I submit, ladies and gentlemen, how would you have reacted if someone had told you.

MR. CLARK: Objection, Your Honor, counsel's asking the jury to put themselves in the place of the victim and it's improper.

THE COURT: Objection overruled.

MS. RATCLIFFE: How would you have reacted if someone had told you those things. Theodore Roosevelt once said, "No man is justified in doing evil on the grounds of expediency." Ladies and gentlemen, again, let's get back to some old fashioned justice. You know and I know that the defendant is guilty. Please find him so on each count.

[¶ 46] A "golden rule" argument asks jurors to place themselves in the shoes of the plaintiff or the victim and is improper in both civil and criminal actions. *Lucas v. State*, 335 So.2d 566, 567 (Fla.Dist.Ct.App. 1976); *Lycans v. Commonwealth*, 562 S.W.2d 303, 306 (Ky.1978); *Chisolm v. State*, 529 So.2d 635, 640 (Miss.1988); *Witter v. State*, 112 Nev. 908, 921 P.2d 886, 899 (1996). *See* 75A Am.Jur.2d *Trial* § 650 (1991). "Golden rule" arguments should be avoided. *Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473, 480–81 (N.D.1986); *Brauer v. James J. Igoe & Sons Const., Inc.*, 186 N.W.2d 459, 473 (N.D.1971); *Larson v. Meyer*, 135 N.W.2d 145, 161–62 (N.D.1965), *overruled on other grounds by Hopkins v. McBane*, 427 N.W.2d 85, 94 (N.D.1988).

[¶ 47] Here, the State's argument on terrorizing improperly asked the jurors to put themselves in the place of Hendrickson. The trial court erred in overruling Carlson's timely "golden rule" objection. Although Carlson did not also request a curative instruction or a mistrial, we believe that, in view of the court's ruling, a request would have been futile. *See Simpson v. State*, 418 So.2d 984, 986–87 (Fla.1982), *cert. denied*, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1004 (1983). We conclude Carlson properly preserved this issue for review.

[¶ 48] Based on the entire record and the context of the improper argument, however, we are not persuaded that a different decision would have resulted absent the error. In our view, the State's brief comment during rebuttal argument was insignificant in the overall context of this case. We conclude that the State's improper "golden rule" argument was not reversible error.

[¶ 49] Carlson did not object to the State's argument that "I know that the defendant is guilty." Assuming the State's argument was improper, *see Schimmel*, 409 N.W.2d at 343, we are not persuaded Carlson suffered a serious injustice. We conclude the State's declaration about Carlson's guilt does not constitute obvious error requiring reversal. *See Ash*, 526 N.W.2d at 483.

## VII

[¶ 50] Carlson contends the trial court erred in denying his motion for judgment of acquittal on the terrorizing charge. Carlson argues there was insufficient evidence to show he intended to place Hendrickson in fear for his or his family's safety.

[¶ 51] A defendant's intent may be established by circumstantial evidence. *State v. Olson*, 552 N.W.2d 362, 364 (N.D. 1996). In reviewing the sufficiency of the evidence, we view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the verdict to decide whether a reasonable fact finder could have found the defendant guilty beyond a reasonable doubt. *Gefroh*, 495 N.W.2d at 655. The tasks of weighing the evidence and judging the credibility of the witnesses belong to the jury. *Id.* On appeal, we assume the jury believed the evidence which supports the verdict and disbelieved any contrary evidence. *Id.* Viewing the evidence in the light most favorable to the verdict, we conclude there was substantial evidence to support the terrorizing conviction.

[¶ 52] We affirm the judgments of conviction.

[¶ 53] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.