2005 ND 191

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Virgil Scott LAIB, Defendant and Appellant.**

**No. 20050099.**

Supreme Court of North Dakota.

Nov. 9, 2005.

Walter M. Lipp, State's Attorney, McClusky, N.D., for plaintiff and appellee; submitted on brief.

Kent M. Morrow, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] At a jury trial, Virgil Laib was convicted of terrorizing under N.D.C.C. § 12.1–17–04. He appeals, arguing the evidence was insufficient to convict him. Specifically, he argues that because he made no verbal threats, his conduct the night of the alleged offense does not meet the threat element of terrorizing. Holding that a threat does not have to be made verbally to be a terroristic threat under N.D.C.C. § 12.1–17–04, we affirm the criminal judgment and commitment.

## I

[¶ 2] One night in February 2004, Laib and his wife were involved in a domestic dispute. The exact circumstances are themselves disputed. According to Laib's testimony at trial, his wife struck one of their children with a spoon earlier that evening, and he and his wife argued over the alleged abuse. Laib testified that he then discovered $1,000 was missing from the family safe, and when he asked his wife about the missing money, she said she had purchased $500 worth of medicine. According to Laib's testimony, their argument continued until he led his wife by the arm toward the door and out of the house. Laib testified that she came back into the house and slept on the couch.

[¶ 3] Laib's wife disputed Laib's account of the facts. Laib's wife testified that Laib wanted to have sex, and that after she refused, he became angry and a fight ensued. She testified Laib grabbed her around the neck with his arms, choking her, and then he stopped choking her, pushed her into a wall, and forced her outside of the house. She testified that she was dressed only in a nightshirt. She testified that after a couple of minutes, she reentered the house and slept on the family's living room floor because one of the children was sleeping on the couch. According to her testimony, Laib was standing inside at the top of the stairs, watching her when she reentered the house, and he periodically watched her throughout the night.

[¶ 4] Law enforcement authorities were not informed of this incident until June 2004, when Laib's wife sought a protection order against him. Laib was

charged with terrorizing. A jury found him guilty of the charge.[1] He was sentenced to three years imprisonment with all but 60 days suspended.

[¶5] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 29–28–06.

## II

[¶6] The standard of review for an appeal based on the sufficiency of the evidence is deferential to the fact-finder's verdict:

In reviewing the sufficiency of the evidence, we view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the verdict to decide whether a reasonable fact finder could have found the defendant guilty beyond a reasonable doubt. The tasks of weighing the evidence and judging the credibility of the witnesses belong to the jury. On appeal, we assume the jury believed the evidence which supports the verdict and disbelieved any contrary evidence.

*State v. Carlson*, 1997 ND 7, ¶51, 559 N.W.2d 802 (citations omitted). Laib moved for an acquittal, thus preserving the issue for appeal. N.D.R.Crim.P. 29.

## III

[¶7] Laib argues the evidence is insufficient to support a conviction for terrorizing because there is no evidence that he verbally threatened his wife, which he contends is required by the threat element of the offense. The State argues that the threat contemplated by N.D.C.C. § 12.1–17–04 does not need to be verbal;

it requires only that a threat be communicated by speech, writing, or act. We hold that a threat does not have to be made verbally to be a terroristic threat under N.D.C.C. § 12.1–17–04.

[¶8] Section 12.1–17–04, N.D.C.C., provides, in part:

A person is guilty of a class C felony if, with intent to place another human being in fear for that human being's or another's safety or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious disruption or public inconvenience, or in reckless disregard of the risk of causing such terror, disruption, or inconvenience, the person:

1. Threatens to commit any crime of violence or act dangerous to human life[.]

For Laib's conviction of terrorizing, the State had to prove: (1) the defendant intended to put the victim in fear for her safety or acted with reckless disregard of the risk of causing her fear; and (2) the defendant made a threat of a "crime of violence or act dangerous to human life." N.D.C.C. § 12.1–17–04; *Carlson*, 1997 ND 7, ¶36, 559 N.W.2d 802. "[T]he critical inquiry is whether the defendant intended to place others in fear for their safety." *Carlson*, at ¶20. Whether N.D.C.C. § 12.1–17–04 requires verbal threats is a question of law, fully reviewable by this Court. *Estate of Kimbrell*, 2005 ND 107, ¶9, 697 N.W.2d 315.

[¶9] Section 12.1–17–04 does not define "threat." Words used in statutes are to be given their ordinary meaning. N.D.C.C. § 1–02–02. *Black's Law Dictionary* defines "threat" as: "A communicated intent to inflict harm or loss on another

---

1. The jury also found Laib not guilty of other charges relating to other incidents involving his wife and children.

or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent." *Black's Law Dictionary* 1519 (8th ed.2004). "Communication" is defined as: "The expression or exchange of information by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception." *Id.* at 296. The plain reading of these definitions is that a threat can be communicated in several ways, only one of which is verbal. *Webster's New World Dictionary* defines threat as "an expression of intention to hurt, destroy, punish, etc., as in retaliation or intimidation." *Webster's New World Dictionary* 1482 (2d coll. ed.1980). Neither definition limits the method of communicating a threat to speaking.

[¶ 10] Section 12.1–23–10(12), N.D.C.C., defines threat for theft and related offenses. Threat in this context is defined, in part, as:

an expressed purpose, however communicated, to:

a. Cause bodily injury in the future to the person threatened or to any other person;

. . . .

c. Subject the person threatened or any other person to physical confinement or restraint;

d. Engage in other conduct constituting a crime; [or]

. . . .

l. Do any other act which would not in itself substantially benefit the actor or a group he represents but which is calculated to harm another person in a substantial manner with respect to his health, safety, business, employment, calling, career, financial condition, reputation, or personal relationship.

N.D.C.C. § 12.1–23–10(12). Although the definition provided in N.D.C.C. § 12.1–23–10 specifically applies only to chapter 12.1–

23, the definition demonstrates what the legislature intends when it uses the word "threat." The phrase "however communicated" implies that a threat could be in words, verbal or written; actions; gestures; suggestive innuendo; or any other form of communication.

[¶ 11] Section 12.1–17–04, N.D.C.C., was patterned after § 1614 of the proposed Federal Criminal Code, and we look to the *Working Papers of the National Commission on Reform of Federal Criminal Laws* for guidance when interpreting sections of the North Dakota criminal code. *E.g., Carlson,* 1997 ND 7, ¶ 19, 559 N.W.2d 802. The *Working Papers* discussing terrorizing and menacing state: "The threat may be a prank, or may be made in anger; while there may be no intent to inflict actual injury, such acts can be intended to cause fear." II *Working Papers of the National Commission on Reform of Federal Criminal Laws* 837 (July 1970).

[¶ 12] To hold that a threat must be verbal would lead to the irrational result that a perpetrator could clearly threaten and terrorize a victim, but would be immune from the crime of terrorizing merely by not saying a word. For example, a perpetrator could tie a victim to a chair, pour gasoline around the victim, step away, and light a match, all without saying a word. Although the perpetrator has never said, "I'm going to kill you," or "you're going to burn," this message is still clearly communicated. Actions can speak louder than words.

 [¶ 13] Weighing the evidence in a light most favorable to the verdict supports the conviction. Laib's act of forcing his wife outside their house in the middle of winter while she was wearing only a nightshirt constituted a threat of a crime of violence or act dangerous to human life. Laib's wife testified that after attempting to choke her, Laib took her by the arm

and forced her outside. She testified that it was cold and that she was wearing only a nightshirt. Although Laib did not lock the door, his wife did not know that until she tried to reenter. She reentered after a couple of minutes because she could no longer stand the cold, especially on her bare feet. Being outside during a cold winter night without proper attire or shelter can be dangerous to human life. A communication, either verbal or nonverbal, is sufficient to be a threat if a reasonable person could conclude that it was a threat under the circumstances. *State v. Hass,* 268 N.W.2d 456, 463 (N.D.1978). The jury, as a reasonable fact-finder, could easily conclude that Laib was threatening to commit an act dangerous to human life, specifically, locking someone outside during a cold winter night without sufficient clothing or shelter. There was sufficient evidence for the jury to find Laib guilty of terrorizing as provided for in N.D.C.C. § 12.1–17–04.

[¶ 14] We affirm the criminal judgment and commitment.

[¶ 15] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.