# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 101

State of North Dakota,                                    Plaintiff and Appellee

v.

Abdiwali Mohamud,                                     Defendant and Appellant

No. 20180333

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lolita G. Hartl Romanick, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Justice.

Rachel R. Egstad, Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Jensen, Justice.**

[¶1]     Abdiwali Mohamud appeals from a criminal judgment issued after a jury found him guilty of aggravated assault—domestic violence, interference with telephone during an emergency call, and terrorizing.  On appeal, Mohamud argues the district court erred in denying his motion to dismiss for unnecessary delay, there was insufficient evidence to convict him of the three charges, and he was given an illegal sentence.  We affirm the criminal judgment denying Mohamud's motion to dismiss, conclude there was sufficient evidence to convict Mohamud of the three charges, and find the no-contact order issued by the district court to be a condition of probation.

I.

[¶2]     On March 14, 2016, Mohamud was charged with aggravated assault—domestic violence, interference with telephone during an emergency call, and terrorizing.  These charges were related to an incident involving Mohamud's wife, which occurred on March 12, 2016.  A preliminary hearing was held on April 18, 2016, and the district court found probable cause existed to support the charges.  On September 16, 2016, the State filed a motion to dismiss the case against Mohamud based upon an unavailable witness.  The court dismissed the case without prejudice on September 20, 2016, prior to any response by Mohamud.

[¶3]     Roughly eight months later, on May 5, 2017, the State re-charged Mohamud with aggravated assault—domestic violence, interference with telephone during an emergency call, and terrorizing.  Mohamud was ordered to have no contact with his wife on June 12, 2017 and also not to have contact with his son on June 13, 2017.  Mohamud's attorney filed a motion to dismiss the case on September 28, 2017.  The district court denied Mohamud's motion to dismiss on October 27, 2017.  On December 7, 2017, Mohamud made an oral motion to the court requesting the case

be dismissed. The court denied the second motion to dismiss based on timeliness and on the merits. A trial was held August 21 through August 23, 2018. Mohamud was found guilty on all three charges. As part of the criminal judgment, Mohamud was ordered to have no contact with his minor child.

## II.

[¶4] Mohamud argues the district court erred in denying his motion to dismiss based on unnecessary delay. Mohamud argues that under N.D.R.Crim.P. 48, the eight-month delay between the dismissal without prejudice and the refiling of charges constituted an unnecessary delay which requires dismissal of the charges with prejudice.

[¶5] A district court's decision on a motion to dismiss a criminal case without prejudice is reviewed for an abuse of discretion. *State v. Gwyther*, 1999 ND 15, ¶¶ 11-12, 589 N.W.2d 575. A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law. *Id.*; *see also State v. Moos*, 2008 ND 228, ¶ 30, 758 N.W.2d 674. A criminal charge dismissed without prejudice may be refiled within the applicable statutory period. *State v. Jones*, 2002 ND 193, ¶ 23, 653 N.W.2d 668. Under N.D.R.Crim.P. 48(a), a prosecuting attorney may dismiss charges, provided a motion to dismiss is supported by a written statement concisely stating the reasons for the motion, the statement is filed with the clerk, and the motion is open to public inspection.

[¶6] Rule 48(b)(4), N.D.R.Crim.P., allows the district court to dismiss charges should there be an unnecessary delay in bringing a defendant to trial. Rule 48(b), N.D.R.Crim.P., "acts as a vehicle for enforcing the Sixth Amendment right to a speedy trial. The court can dismiss whenever there has been unnecessary delay without being required to decide whether the unnecessary delay was of such a nature as to deprive the defendant of a constitutional right." N.D.R.Crim.P. 48(b), explanatory note.

[¶7]   Here, the district court reviewed the State's reasoning for the dismissal without prejudice and did not find any irregularities.  The court also noted there was an absence of factual information indicating how Mohamud was prejudiced by the eight-month delay.  The dismissal may have been inconvenient, but Mohamud was essentially put back in the place he was before charges were filed.  We conclude the district court did not abuse its discretion by denying Mohamud's motion to dismiss for undue delay.

[¶8]   Mohamud also claims his Sixth Amendment right to a speedy trial was violated due to the eight-month delay related to the dismissal.  We review a district court's speedy trial decision de novo, with the court's findings of fact reviewed under the clearly erroneous standard of review.  *State v. Moran*, 2006 ND 62, ¶ 8, 711 N.W.2d 915.  This Court has adopted the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), which is used to evaluate the validity of a speedy trial claim under the United States Constitution, the North Dakota Constitution, and N.D.C.C. § 29-01-06(5).  The test requires consideration of four factors:  (1) length of the delay, (2) reason for the delay, (3) proper assertion of the right, and (4) actual prejudice to the accused.  *State v. Owens*, 2015 ND 68, ¶ 9, 860 N.W.2d 817 (discussing *Barker*, 407 U.S. 514).  No single factor is dispositive, and all factors must be weighed.  *Moran*, at ¶ 8.

[¶9]   Here, the length of the delay was eight months.  A delay of one year or more is presumptively prejudicial triggering an analysis of the other speedy trial factors. *Moran*, 2006 ND 62, ¶ 9, 711 N.W.2d 915.  Clearly the delay does not trigger the presumption of prejudice.

[¶10] The reason for delay was the unavailability of a witness due to "family emergency or other circumstances."  The record indicates Mohamud's wife was not willing to testify because her father was facing death threats in Somalia related to the charges against her husband.  Once her father was safely in the United States, she was once again willing to testify.  The district court cited the State's reasoning for the

dismissal and stated "Mohamud has not shown that this explanation was untrue." The court went on to indicate the record was silent to Mohamud requesting a speedy trial, and that Mohamad had produced no evidence of prejudice resulting from the delay.

[¶11] Further, in *State v. Moore*, this Court explained the right to a speedy trial does not apply to cases where the State dismisses charges in good faith. 2003 ND 83, ¶ 8, 662 N.W.2d 263 (discussing *United States v. MacDonald*, 456 U.S. 1, 7 (1982)). As part of its analysis, the district court found there to be no evidence of bad faith on the part of the State in the underlying motion to dismiss without prejudice. The court did not err as a matter of law and did not come to any erroneous factual determinations in its analysis. In turn, Mohamud's right to a speedy trial was not violated.

### III.

[¶12] Mohamud challenges the sufficiency of the evidence regarding each of his convictions. The standard of review regarding the sufficiency of the evidence in criminal convictions is well established:

> In reviewing sufficiency of the evidence challenges, we review the record to determine whether there is sufficient evidence that could allow a jury to draw a reasonable inference in favor of the conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. We do not reweigh conflicting evidence or judge the credibility of witnesses.

*City of Bismarck v. Schaffner*, 2018 ND 168, ¶ 6, 914 N.W.2d 500 (citations and quotation marks omitted).

[¶13] Mohamud argues there was not sufficient evidence to convict him of aggravated assault. An individual is guilty of aggravated assault if they "[w]illfully cause[] serious bodily injury to another human being." N.D.C.C. § 12.1-17-02 (1)(a). "Willfully" is defined as engaging in conduct "intentionally, knowingly, or recklessly." N.D.C.C. § 12.1-02-02. Under N.D.C.C. § 12.1-01-04, "serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or which causes serious permanent disfigurement, unconsciousness, extreme pain, permanent

loss or impairment of the function of any bodily member or organ, a bone fracture, or impediment of air flow or blood flow to the brain or lungs."

[¶14] Here, there was testimony from Mohamud's wife stating he put her in a choke hold and she felt like she was going to pass out. There was also evidence received documenting the injuries to Mohamud's wife. Dr. Schanzenbach treated Mohamud's wife after the incident. Dr. Schanzenbach testified regarding the injuries suffered by Mohamud's wife and stated they were consistent with strangulation. The testimony stating Mohamud intentionally put his wife in a choke hold satisfies the requirement that the conduct be "willful." The testimony that Mohamud's wife felt as though she was going to pass out, along with Dr. Schanzenbach's testimony that her injuries were consistent with strangulation, satisfies the "serious bodily injury" language of N.D.C.C. § 12.1-01-04. When the evidence is viewed in the light most favorable to the verdict, it was reasonable for the jury to find Mohamud guilty of aggravated assault.

[¶15] Mohamud argues there was not sufficient evidence to convict him of interference with an emergency call. Under N.D.C.C. § 12.1-21-06.1, an individual is guilty of a class C felony if the individual intentionally "removes, damages, or obstructs any telephone or telephone line or any part or apparatus on the line, or severs any wire connected to the line, so as to interfere with an emergency telephone call."

[¶16] Mohamud's wife testified that once she was able to get away from Mohamud, she called 911. She then testified Mohamud told her she could not call 911, grabbed the phone from her, and threw it on the couch. There is also testimony in the record indicating a 911 call was received from the number associated with Mohamud's wife's phone, and there was no answer when the call center called the number back. Mohamud disputes the sequence of events and questions his wife's suggestion the battery came out of her phone when he threw it. However, on appeal, we do not reweigh conflicting evidence or judge the credibility of witnesses. There is evidence

5

in the record suggesting Mohamud intentionally removed the phone from his wife's possession and obstructed her attempt to make an emergency phone call. When the evidence is viewed in the light most favorable to the verdict, it was reasonable for the jury to find Mohamud guilty of interference with an emergency call.

[¶17] Mohamud argues there was not sufficient evidence to convict him of terrorizing. Under N.D.C.C. § 12.1-17-04, an individual is guilty of terrorizing if the individual "with intent to place another human being in fear for that human being's or another's safety . . . or in reckless disregard of the risk of causing such terror, disruption, or inconvenience, the person . . . [t]hreatens to commit any crime of violence or act dangerous to human life[.]" In order to sustain a conviction of terrorizing, the State had to prove: (1) the defendant intended to put the victim in fear for her safety or acted with reckless disregard of the risk of causing her fear; and (2) the defendant made a threat of a "crime of violence or act dangerous to human life." N.D.C.C. § 12.1-17-04; *State v. Carlson*, 1997 ND 7, ¶ 36, 559 N.W.2d 802; *State v. Laib*, 2005 ND 191, ¶ 8, 705 N.W.2d 815.

[¶18] Here, Mohamud's wife testified while Mohamud was strangling her, he stated, "I'm going to break your neck. This is your last night." She also testified she believed she was going to die during Mohamud's attack. The statement asserting Mohamud would break his wife's neck and kill her was a threat of violence dangerous to human life. The statement, taken in conjunction with the attack, allows the jury to infer Mohamud made the statement either intentionally or with reckless disregard of the risk of causing his wife fear.

[¶19] Mohamud disputes that his wife was in fear of her life because she did not respond when the 911 call center called her back. However, on appeal, we do not reweigh conflicting evidence or judge the credibility of witnesses. When the evidence is viewed in the light most favorable to the verdict, it was reasonable for the jury to find Mohamud guilty of terrorizing.

IV.

6

[¶20] Mohamud argues he was given an illegal sentence because the criminal judgment does not allow contact with his minor child. A sentence is illegal if it is in excess of a statutory provision or in some other way contrary to an applicable statute. *State v. Booth*, 2015 ND 59, ¶ 4, 861 N.W.2d 160. "This Court will vacate a district court's sentencing decision only if the court acted outside the limits prescribed by statute or substantially relied on an impermissible factor in determining the severity of the sentence." *State v. Klein*, 2014 ND 166, ¶ 7, 851 N.W.2d 159. Appellate review of a criminal sentence is generally limited to determining whether the district court acted within the statutory sentencing limits or substantially relied upon an impermissible factor. *State v. Corman*, 2009 ND 85, ¶ 15, 765 N.W.2d 530. Statutory interpretation is a question of law, which is fully reviewable on appeal. *Id.* "Penal statutes are generally strictly construed against the government." *Id.*

[¶21] Mohamud relies on *State v. Wilder* to support his position the district court was not allowed to prohibit contact with his minor child as part of its sentence. 2018 ND 93, 909 N.W.2d 684. In *Wilder*, the defendant was found guilty of murdering his wife and he was ordered to have no contact with the children he shared with the victim until they turned eighteen. *Id.* at ¶ 14. This Court held that while the legislature authorized the court to issue no-contact orders in other similar situations, it did not authorize the court to order no contact as part of only a sentence of imprisonment. *Id.* at ¶ 19.

[¶22] There are important distinctions between *Wilder* and the matter before this Court. Wilder was sentenced to only a term of imprisonment, and N.D.C.C. § 12.1-32-02 did not allow for a court to issue no-contact orders along with only a term of imprisonment. Here, Mohamud was sentenced to three years of supervised probation as part of his sentence.

[¶23] In *Wilder*, this Court noted under N.D.C.C. § 12.1-32-07(2), a district court may order a probation condition prohibiting the defendant from entering a specific location when the condition would assist the defendant in leading a law-abiding life.

7

2018 ND 93, ¶ 19, 909 N.W.2d 684. It is a logical extension that a court may also issue a no-contact order prohibiting a probationer from contacting individuals when the condition would assist the defendant in leading a law-abiding life as well.

[¶24] While the no-contact order is permissible as a condition of probation, it appears in the criminal judgment here. The conditions of probation then go on to incorporate the terms of the judgment into the probationary sentence. There are two reasonable interpretations of this sentence: (1) the no-contact order enumerated in the judgment is really a condition of probation and, (2) the no-contact order is part of the judgment. These reasonable interpretations lead to extremely different outcomes—the latter of which results in an illegal sentence. If the no-contact order is part of the conditions of probation, it is proper and expires in three years when the probationary period ceases. If the no-contact order is part of the judgment, it continues in perpetuity and is an illegal sentence. "[T]he rules for interpreting judgments mirror the rules for interpreting contracts." *Silbernagel v. Silbernagel*, 2007 ND 124, ¶ 10, 736 N.W.2d 441. A contract should be construed to follow the law, not to contravene it. *See Seher v. Woodlawn Sch. Dist. No. 26*, 59 N.W.2d 805, 810 (N.D. 1953). "This court will not place an interpretation on a judgment that permits it to be rendered ineffective and unenforceable." *Zent v. Zent*, 281 N.W.2d 41, 47 (N.D. 1979). If there are two reasonable interpretations of a judgment, one which is lawful and another that is unlawful, this Court will interpret the judgment using the lawful interpretation. In turn, we interpret the no-contact order to be a condition of probation.

V.

[¶25] The district court did not err when it denied Mohamud's motion to dismiss. When the evidence is viewed in the light most favorable to the verdict, it was reasonable for the jury to find Mohamud guilty of all three charges. We interpret the

8

no-contact order as a condition of probation and affirm the criminal judgment.

[¶26] Jon J. Jensen
Jerod E. Tufte
Lisa Fair McEvers

I concur in the result.
Daniel J. Crothers
Gerald W. VandeWalle, C.J.

9