# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2020 ND 50

State of North Dakota,                              Plaintiff and Appellee

v.

Henry Lee Marcum,                              Defendant and Appellant

No. 20190229

Appeal from the District Court of Logan County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Isaac J. Zimmerman, State's Attorney, Napoleon, ND, for plaintiff and appellee; submitted on brief.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

## State v. Marcum
## No. 20190229

**Crothers, Justice.**

[¶1]   Henry Lee Marcum appeals from a criminal judgment entered after a bench trial finding him guilty of a lesser included offense of possession of a controlled substance and possession of drug paraphernalia. We affirm.

I

[¶2]   On June 10, 2018, Marcum was charged with one count of possession of a controlled substance, second or subsequent offense, in violation of N.D.C.C. § 19-03.1-23, a class C felony, and one count of possession of drug paraphernalia, second or subsequent offense, in violation of N.D.C.C. § 19-03.4-03, a class C felony.

[¶3]   On June 6, 2018, Logan County Sheriff Bartholomaus had a conversation with Jamestown Police Detective Gross. Gross told Bartholomaus if a warrant came through the Central Warrant Information System (CWIS) for Marcum that it would be a good warrant. Bartholomaus testified he saw the active warrant on CWIS on June 7, 2018. The warrant cited criminal case no. 47-2018-CR-250 and accused Marcum of violating N.D.C.C. § 12.1-11-03 for providing "False Information or Report to Law Enforcement." Bartholomaus testified he was familiar with Stutsman County case no. 47-2018-CR-250, and knew Marcum had been served the warrant in that case in April 2018, and was released.

[¶4]   On June 8, 2018, Bartholomaus responded to a noise complaint at the Marcum residence. He spoke with Marcum's wife (Ms. Marcum) and she assured him everything was fine. Bartholomaus did not attempt to arrest Marcum on the warrant. On the same day, Logan County Deputy Lewis testified he received a call from either Stutsman County or Jamestown PD informing him there was a warrant of arrest out for Marcum. Lewis testified they told him the warrant is valid if it still is in CWIS.

[¶5]   Bartholomaus testified he arrested Marcum on June 10, 2018, on a "Corrected Warrant of Arrest" that Jamestown police stated was valid. On that same day, Bartholomaus received a call from Lewis regarding a possible trespass involving Marcum. Law enforcement went to Marcum's son's girlfriend's residence to speak with Marcum about the possible trespass and follow-up on the arrest warrant. Bartholomaus testified on the way to the residence Lewis called dispatch to confirm the warrant was valid. Upon arrival at the residence, law enforcement informed Marcum there was a warrant out for his arrest. Marcum told police there was no active warrant in case no. 47-2018-CR-250 because he had been arrested and released on bond. Ms. Marcum testified she pulled up public records on www.ndcourts.gov to show law enforcement there was no active warrant. Marcum asked if he could go to the bathroom. Bartholomaus testified he told Marcum he would allow him to go to the bathroom, but since he was under arrest Marcum would need to be searched first. Bartholomaus testified he patted down Marcum, and when he moved to Marcum's right boot Marcum stepped on the cuff of his pants with his left foot, and he held his right leg tight up against his left leg. Bartholomaus testified he felt a bulge on the inside of Marcum's sock on his right leg. Bartholomaus testified when he asked Marcum what was in his sock, Marcum stated a knife. When Bartholomaus told Marcum he could not have a knife, Marcum stated, "No. It's not a knife; it's a meth pipe." Upon further search, Bartholomaus found a glass pipe with methamphetamine residue wrapped in tissue paper in Marcum's sock in his right boot.

[¶6]   At trial Marcum argued he was not using drugs and had the pipe in his sock because he found it at his house and went to confront his son's girlfriend about whether she or his son were using methamphetamine. He testified he was concerned his son was using again because he had recently overdosed when he was in Florida. Marcum described a recent event where he and his wife went to Florida to visit their son after his overdose. When they returned home, they found drug paraphernalia scattered throughout their home. They found out that their other son, and the same girlfriend, who was dating the son who was in North Dakota at the time, used their property as "a drug house." They took pictures of the drug paraphernalia but did not report the incident to law enforcement.

[¶7] A district court judge found Marcum guilty on a lesser included offense of possession of a controlled substance, first offense, a class A misdemeanor, and possession of drug paraphernalia, second or subsequent offense, a class C felony. The district court judge explained the possession of drug paraphernalia charge was a second or subsequent offense because Marcum had drug possession convictions of cocaine in Ohio. On appeal, Marcum argues the district court erred when it denied his motion to suppress evidence from what he argues was an unconstitutional arrest, and the evidence was insufficient to convict him. Marcum requests that the verdict be reversed or that this Court vacate the verdict and reverse the district court order denying his motion to suppress.

II

[¶8] The standard of reviewing a district court's decision on a motion to suppress is well established:

> "We will defer to a trial court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence."

*State v. Genre*, 2006 ND 77, ¶ 12, 712 N.W.2d 624 (citing *State v. Tollefson*, 2003 ND 73, ¶ 9, 660 N.W.2d 575) (quoting *State v. Heitzmann*, 2001 ND 136, ¶ 8, 632 N.W.2d 1). Questions of law receive de novo review. *Genre*, at ¶ 12 (citing *Tollefson*, at ¶ 9).

[¶9] "Our evidentiary standard of review for a criminal bench trial is the same as if the case had been tried to a jury." *State v. Treis*, 1999 ND 136, ¶ 9, 597 N.W.2d 664 (citing *State v. Nehring*, 509 N.W.2d 42, 44 (N.D. 1993)) (citing *State v. Johnson*, 425 N.W.2d 903 (N.D. 1988)). "In cases challenging a conviction, we do not weigh conflicting evidence, nor do we judge the credibility of witnesses; instead, we look only to the evidence and its reasonable inferences

4

most favorable to the verdict to see whether substantial evidence exists to warrant conviction." *Treis*, at ¶ 9 (citing *State v. Overby*, 497 N.W.2d 408, 414 (N.D. 1993)). "The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict." *State v. Mohamud*, 2019 ND 101, ¶ 12, 925 N.W.2d 396.

III

[¶10]  Marcum argues the district court erred when it denied his motion to suppress evidence because his arrest was unconstitutional.

[¶11] The State argues law enforcement received and executed a valid arrest warrant, that law enforcement took several steps to ensure the warrant was valid, and each step confirmed the warrant was valid. The State argues since the arrest was valid, the search incident to a lawful arrest was valid.

[¶12] "Absent an exception, 'all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.'" *State v. Dodson*, 2003 ND 187, ¶ 19, 671 N.W.2d 825. "The good faith exception to the exclusionary rule under the Fourth Amendment of the United States Constitution was recognized by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984)." *Dodson*, at ¶ 20. "The Court held exclusion of evidence is not the proper remedy when an officer has acted in good faith upon objectively reasonable reliance that a warrant was properly issued by a neutral and detached magistrate." *Id.* (citing *Leon*, 468 U.S. at 922). "We have summarized four situations in which reliance cannot be objectively reasonable under *Leon* as:

> '(1) when the issuing magistrate was misled by false information intentionally or negligently given by the affiant; (2) when the magistrate totally abandoned her judicial role and failed to act in a neutral and detached manner; (3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and

(4) when a reasonable law enforcement officer could not rely on a facially deficient warrant.'"

*Id.* (citing *State v. Herrick*, 1999 ND 1, ¶ 15, 588 N.W.2d 847). "The basis of the good faith exception is that if an officer reasonably relies on a warrant in good faith, there is no police misconduct to deter." *Id.* (citing *Leon*, 468 U.S. at 916). "It is not used to deter misconduct of judges or magistrates." *Id.* "[T]his Court and other state courts have stated federal precedent is controlling when evaluating the good faith exception under the Fourth Amendment." *Id.* at ¶ 26 (citing *State v. Hughes*, 1999 ND 24, ¶ 5, 589 N.W.2d 912) ("'Federal precedent controls' when the defendant does not properly raise a state constitutional issue"); *see also State v. Thomas*, 540 N.W.2d 658, 666 (Iowa 1995) ("In assessing Fourth Amendment violations, this court is bound by federal law."); *State v. Saiz*, 427 N.W.2d 825, 828 (S.D. 1988) ("the Fourth Amendment question in this case is controlled by *Leon*.").

[¶13] Here, the original arrest warrant in Stutsman County case no. 47-2018-CR-250 was issued on April 3, 2018. The arrest warrant was served on Marcum and he was arrested even though the name on the warrant was Angela Louise Marcum, who also had been arrested for false information or report to law enforcement. He posted a $1,000 bond, and was released. On June 5, 2018, a "Corrected Warrant of Arrest" was issued. The corrected warrant had Henry Lee Marcum's name on it. Marcum was arrested and searched on June 10, 2018, based on the June 5, 2018 warrant.

[¶14] In denying the motion to suppress the district court stated:

> "In this case, I don't find anything at all troubling with the way the law enforcement officers executed the warrant. In fact, it appears to me, based on the testimony of the sheriff, that in addition to checking with State Radio, which is I think a CJIS check, to inquire as to the validity of the warrant, the—when the defendant complained that the warrant was not valid and there was some mistake they checked with the specific issuing agency and were told 'No. This is our warrant, and we want the defendant arrested.'

6

"That's good faith reliance on a facially valid warrant, and therefore, the motion to suppress is denied."

[¶15] In the findings of the court at bench trial the judge addressed the warrant again and referenced the motion to suppress. The district court stated:

"An arrest warrant is a court order. Law enforcement is ordered to take an individual into custody. In this particular case, for reasons that aren't clear to me, there was a second warrant issued, apparently to correct the language; that part's clear to me. Law enforcement, I think, fell over themselves to confirm that this warrant was a valid warrant. They're in a jurisdiction that's not the jurisdiction that issued the warrant. They contacted the jurisdiction that issued the warrant multiple times and were told it's a valid warrant. They don't have the authority to go behind the warrant and try to investigate whether or not it's a valid warrant. They receive information from the agency that is issuing the warrant, and they're told it's valid. They're—that becomes a court order. They're bound by their oath of office, I think, to execute that warrant, and they did so.

"Once they do that, they conduct a valid search incident to arrest."

[¶16] Assuming without deciding the Corrected Warrant of Arrest was not valid, law enforcement relied on the warrant in good faith. At trial Bartholomaus testified Gross told him that if there is a warrant for Henry Marcum in the Central Warrant Information System (CWIS) "it's good." He also testified at the time of the arrest he did not have possession of the corrected warrant of arrest but saw what was in CWIS and Lewis called dispatch to confirm the warrant was valid.

[¶17] Lewis testified either Stutsman County or Jamestown PD contacted him two days before the incident and informed him there was a warrant out for Marcum. He stated they told him the warrant was valid if it still was in CWIS. He testified on June 10, 2018, while driving to the residence he verified the warrant was still in CWIS. He also testified he confirmed the warrant through dispatch, they told him it was a valid warrant, and that they would send a deputy to meet Lewis to transport Marcum the rest of the way to Jamestown.

7

After being asked if he spoke to Marcum about whether he had taken care of this arrest warrant previously Lewis stated,

> "I don't believe so. I believe he made a reference to it, and I discussed it, and I said, 'well, I'm being told by the agency that issued it that it's valid.' I don't—I can't go through their reports, so I take the word from a fellow law enforcement officer saying a warrant is valid as valid. I had no reason to believe it wasn't at the time."

[¶18] Exclusion of evidence is not the proper remedy when law enforcement acts in good faith upon objectively reasonable reliance that a warrant was properly issued. There is sufficient competent evidence capable of supporting the district court's findings, and its decision is not contrary to the manifest weight of the evidence. Therefore, we affirm the district court's denial of the motion to suppress.

## IV

[¶19] Marcum argues the evidence was insufficient to convict him of enhanced charges because he has no equivalent conviction of possession of drug paraphernalia and residue in a pipe is insufficient to support a conviction for willful possession of methamphetamine.

[¶20] The State argues the district court's findings provide more than an adequate basis for the court's ultimate conclusion and sufficient evidence supports Marcum's convictions.

### A

[¶21]  In *State v. Kuruc*, 2014 ND 95, ¶ 32, 846 N.W.2d 314, we described rules for construing statutes:

> "Statutory interpretation is a question of law. Statutes must be construed as a whole and harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence. In construing statutes, we consider the context of the statutes and the purposes for which they were enacted. When a general statutory provision conflicts

8

with a specific provision in the same or another statute, the two must be construed, if possible, so that effect may be given to both provisions. When statutes relate to the same subject matter, this Court makes every effort to harmonize and give meaningful effect to each statute."

(Internal citations and quotation marks omitted.)

[¶22] Section 19-03.4-03(2), N.D.C.C., states:

"A person may not use or possess with the intent to use drug paraphernalia to inject, ingest, inhale, or otherwise induce into the human body a controlled substance, other than marijuana, classified in schedule I, II, or III of chapter 19-03.1. A person violating this subsection is guilty of a class A misdemeanor. If a person previously has been convicted of an offense under this title, other than an offense related to marijuana, or an equivalent offense from another court in the United States, a violation of this subsection is a class C felony."

[¶23] Here, the district court concluded, "if a person previously has been convicted of an offense *under this title*, other than an offense related to marijuana, or an equivalent offense from another court in the United States, a violation of this subsection is a class C felony," meant equivalent out-of-state convictions under the entire drug code leads to enhancement. (Emphasis added.) The court explained N.D.C.C. § 19-03.4-03 refers to a conviction "under this title" and that "under this title" means a conviction under the *entire drug code*, title 19. The court's reasoning is that previous equivalent drug offenses (and not just paraphernalia charges) would be equivalent out-of-state convictions. The court found this included the Ohio convictions for possession of cocaine that were submitted by certified criminal judgment.

[¶24] This Court discussed N.D.C.C. § 19-03.4-03(2) in *State v. Johns*, 2019 ND 227, 932 N.W.2d 893. Section 19-03.4-03(2), N.D.C.C., "enhances the charge from a class A misdemeanor to a class C felony if the person previously has been convicted of an offense under N.D.C.C. title 19." *Johns,* at ¶ 2. Therefore, this Court stated N.D.C.C. § 19-03.4-03(2) refers to a conviction

9

under title 19, the *entire drug code*. This is consistent with the unambiguous language in N.D.C.C. § 19-03.4-03(2) "offense under this title."

[¶25] Marcum was convicted in Ohio on two counts of possession of cocaine under Ohio Revised Code 2925.11. At that time Ohio Revised Code stated, "No person shall knowingly obtain, possess, or use a controlled substance." It then separates the charges dependent on the type of drug. For example, 2925.11(C)(4) prohibits possession of cocaine. In North Dakota "it is unlawful for any person to willfully . . . possess a controlled substance." N.D.C.C. § 19-03.1-23(8). Cocaine is a controlled substance as defined in N.D.C.C. §§ 19-03.1-01(6) and 19-03.1-07(3)(d). North Dakota does not separate the charges like Ohio. Nonetheless, the Ohio convictions for possession of a controlled substance are an equivalent offense to the North Dakota conviction under title 19.

[¶26] Marcum also argues N.D.C.C. § 19-03.4-03(2) requires the intent to use drug paraphernalia to inject, ingest, inhale, or otherwise induce into the human body a controlled substance, other than marijuana, classified in schedule I, II, or III of chapter 19.03-1, and insufficient evidence established he intended to possess the pipe to inject, ingest, inhale, or otherwise induce into the human body methamphetamine.

[¶27] The district court explained intent:

> "So looking at 'intent' in general, the Court listened to the testimony. The Court heard testimony about and received testimony about when Mr. Marcum and his wife came home from Florida a number of, I think, months prior to his arrest on June 10th, during which their house was slathered in drug paraphernalia, and they didn't call law enforcement. They didn't take the necessary steps to try to, if we're assuming, and there's no evidence to the contrary, in regard to that defense exhibit, that the paraphernalia in their house was not theirs. They didn't take steps to try to involve law enforcement to figure out whose it was and get help or treatment to those who had been using, and it looked like using substantial amounts and in so doing destroying their home.

10

"And that's the backdrop to looking at now, on June 10th, we have testimony that Mr. Marcum finds paraphernalia in his house, and he's going to go confront the neighbor about paraphernalia she may have possessed in his house.

"The testimony regarding why the item of paraphernalia is in his sock I find to be utterly and wholly not credible testimony. When someone has a methamphetamine pipe in their sock and they are [a] person who has an admitted drug history and an admitted methamphetamine history and—there's just so many things in the description of that story: going to her house to fix the screen door and also confront her about the meth pipe that I found in my garage, and I carried that in my sock to keep it from breaking. I don't know how you carry a meth pipe around if you're going to confront the neighbor about it, but in your sock would be the last place you would put it if that was your purpose.

"The circumstantial evidence is that that meth pipe was in your sock because you hid it there and intended to use it for its designed purpose, and that is to consume methamphetamine.

"Therefore, I find beyond a reasonable doubt that is why you possessed the methamphetamine paraphernalia and the methamphetamine that was within that paraphernalia, the pipe."

[¶28] In most cases involving possession of drug paraphernalia, intent to use the device for ingesting, preparing, or storing a controlled substance must be proven by circumstantial evidence. *State v. Christian*, 2011 ND 56, ¶ 16, 795 N.W.2d 702. In *State v. Demarais*, 2009 ND 143, ¶ 10, 770 N.W.2d 246, circumstantial evidence demonstrated intent to possess drug paraphernalia with the intent to use it for the purpose of ingesting when the device was in the woman's purse inside a dresser drawer in a bedroom she shared with her boyfriend, and the defendant was within arm's reach of it when officers began the search. Further, law enforcement found two scales inside the woman's purse, and the pipe, Q-tips and torn baggies tested positive for methamphetamine. *Id*. at ¶¶ 11, 19.

[¶29] Like in *Demarais*, circumstantial evidence provides proof of Marcum's intent to use paraphernalia to inject, ingest, inhale, or otherwise induce into the human body a controlled substance. Marcum hindered law enforcement's efforts to pat down his leg, and when the object was found, Marcum first told

law enforcement the object in his sock was a knife. Marcum then admitted the object was a methamphetamine pipe. Bartholomaus uncovered the pipe which tested positive for methamphetamine. Further, Marcum was a known drug user, and the Marcums did not call law enforcement when they found the paraphernalia in their home upon their return from Florida. Therefore, Marcum's possession of a pipe that he lied about and tried to hide is substantial circumstantial evidence supporting Marcum's conviction. Together with the unwillingness to call law enforcement, this is evidence of Marcum's intent to inject, ingest, inhale, or otherwise induce into the human body a controlled substance.

B

[¶30] Marcum argues residue in the pipe was not sufficient to support the charge of possession of a controlled substance. Section 19-03.1-23(8)(a) and (b), N.D.C.C., states:[1]

> "8. a. It is unlawful for any person to willfully, as defined in section 12.1-02-02, possess a controlled substance or a controlled substance analog unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this chapter, but any person who violates section 12-46-24 or 12-47-21 may not be prosecuted under this subsection.
> b. Except as otherwise provided in this subsection, any person who violates this subsection is guilty of a class A misdemeanor for the first offense under this subsection and a class C felony for a second or subsequent offense under this subsection."

[¶31] Marcum's argument is unavailing. In *Christian*, 2011 ND 56, ¶ 18, 795 N.W.2d 702, we rejected the argument that under N.D.C.C. § 19-03.1-23(7) "dirty" paraphernalia alone is not evidence sufficient to prove possession of

---

[1] Amendments to N.D.C.C. § 19-03.1-23(8) were effective on August 1, 2019. The amendments were not substantive, but changed the numeric ordering from N.D.C.C. § 19-03.1-23(8) to N.D.C.C. § 19-03.1-23(7).

cocaine and the district court erred by instructing the jury that "[c]ocaine residue is cocaine."[2] We held, "the provision does not specify a minimum amount of cocaine—beyond its mere presence—necessary to be convicted of possessing cocaine. Section 19-03.1-23(7), N.D.C.C., prohibits possession of cocaine, regardless of the amount." *Id*. at ¶ 19.

[¶32] Troy Goetz, a forensic scientist, testified he wrote the drug laboratory report and analyzed the pipe in this case. Under "Substance Found" the report stated "Methamphetamine residue." On cross-examination Goetz was asked, "When you say 'residue,' it's just—what do you mean by that?" In response he stated:

> "Basically, what's inside the piece of paraphernalia that under— unless you use like an analytical scale, sometimes you might be able to get a weight. Or it's adhered to or stuck inside the piece of paraphernalia, and we didn't try to scrape it out to weigh it, so we just called it residue because it was in a piece of paraphernalia."

[¶33] Like in *Christian*, where the residue was cocaine for purposes of possession, the residue in the pipe found on Marcum is sufficient for purposes of the offense of possession of methamphetamine. That holding, plus Goetz's testimony provided sufficient evidence supporting the district court finding that Marcum was in possession of a controlled substance.

[¶34] Further, Bartholomaus testified there was substance in the pipe, the substance was field tested, the test turned bright blue indicating it was positive for methamphetamine, the substance was scraped out and weighed on a scale, and the scale showed .4 grams of methamphetamine. Bartholomaus further testified, in his experience in law enforcement, .4 grams of methamphetamine was a usable amount. This evidence also supports Marcum's conviction for possession of a controlled substance.

---

[2] *Christian*, 2011 ND 56, ¶ 18, 795 N.W.2d 702 cites N.D.C.C. § 19-03.1-23(7). For purposes of this case, the portion of the statute we are comparing is substantively the same as N.D.C.C. § 19-03.1-23(8).

## V

[¶35] We affirm denial of the motion to suppress because law enforcement acted in good faith on the arrest warrant and representations about its validity. We affirm the criminal judgment because sufficient evidence supports finding Marcum had a prior conviction for an equivalent offense, and the residue in the pipe found supports the conviction for possession of methamphetamine.

[¶36] Daniel J. Crothers
Gerald W. VandeWalle
Lisa Fair McEvers
Jerod E. Tufte
Jon J. Jensen, C.J.